313 P.2d 706

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Raymond Allen SNOWDEN, Defendant-Appellant.**

No. 8528.

Supreme Court of Idaho.

July 24, 1957.

J. F. Cromwell, Boise, for appellant.

Graydon W. Smith, Atty. Gen., J. R. Smead, Asst. Atty. Gen., and Eugene C. Thomas, Pros. Atty., Boise, for respondent.

McQUADE, Justice.

This is an appeal by the defendant, who had entered a plea of guilty to an information charging him with the crime of murder in the first degree. At all times during the proceedings the defendant was represented by counsel. The district court, after hearing evidence to determine the degree of the crime and mitigating circumstances, if any, held the offense was murder in the first degree, and entered judgment sentencing the defendant to death.

The victim, Cora Lucyle Dean, was stabbed to death September 22, 1956, in Garden City, Idaho. The evidence showed the following sequence of events:

Defendant Snowden had been playing pool and drinking in a Boise pool room early in the evening. With a companion, one Carrier, he visited a club near Boise, then went to nearby Garden City. There the two men visited a number of bars, and defendant had several drinks. Their last stop was the HiHo Club.

Witnesses related that while defendant was in the HiHo Club he met and talked to Cora Lucyle Dean. The defendant himself said he hadn't been acquainted with Mrs. Dean prior to that time, but he had "seen her in a couple of the joints up town." He danced with Mrs. Dean while at the HiHo Club. Upon departing from the tavern, the two left together.

In statements to police officers, that were admitted in evidence, defendant Snowden said after they left the club Mrs. Dean wanted him to find a cab and take her back to Boise, and he refused because he didn't feel he should pay her fare. After some words, he related:

"* * * she got mad at me so I got pretty hot and I don't know whether I back handed her there or not. And, we got calmed down and decided to walk across to the gas station and call a cab. * * *"

They crossed the street, and began arguing again. Defendant said:

"* * * She swung and at the same time she kneed me again. I blew my top."

Defendant said he pushed the woman over beside a pickup truck which was standing near a business building. There he pulled his knife—a pocket knife with a two-inch blade—and cut her throat.

The body, which was found the next morning, was viciously and sadistically cut and mutilated. An autopsy surgeon testified the voice box had been cut, and that this would have prevented the victim from making any intelligible outcry. There were other wounds inflicted while she was still alive—one in her neck, one in her abdomen, two in the face, and two on the back of the neck. The second neck wound severed the spinal cord and caused death. There were other wounds all over her body, and her

clothing had been cut away. The nipple of the right breast was missing. There was no evidence of a sexual attack on the victim; however, some of the lacerations were around the breasts and vagina of the deceased. A blood test showed Mrs. Dean was intoxicated at the time of her death.

Defendant took the dead woman's wallet. He hailed a passing motorist and rode back to Boise with him. There he went to a bowling alley and changed clothes. He dropped his knife into a sewer, and threw the wallet away. Then he went to his hotel and cleaned up again. He put the clothes he had worn that evening into a trash barrel.

After hearing the testimony of police officers and other witnesses, the trial court determined the killing was murder in the first degree and there were no circumstances in mitigation of the offense or of the punishment to be inflicted. The defendant was sentenced to death. This appeal is from that judgment.

The appellant sets forth four assignments of error:

"The court erred in finding that defendant Raymond Allen Snowden acted with malice aforethought at the time of killing deceased Cora Lucyle Dean.

"The court erred in finding that when defendant Raymond Allen Snowden killed deceased Cora Lucyle Dean, his acts were willful, deliberate and premeditated.

"The court erred in finding the defendant guilty of murder, in any degree.

"The court abused its discretion in imposing upon defendant Raymond Allen Snowden the penalty of death."

The first assignment of error is to the effect that the evidence introduced at the hearing was insufficient to support a finding the defendant acted with malice aforethought at the time he took the life of Cora Lucyle Dean. In the third assignment of error, it is stated the court erred in finding the defendant guilty of murder in any degree. These will be joined for the purpose of discussion.

By statute, murder is defined as the unlawful killing of a human being with malice aforethought. I.C. § 18–4001. The defendant admitted taking the life of the deceased. In his admissions to the police officers and the testimony of the witnesses, there was no showing by the defendant of justifiable or excusable homicide.

Malice is defined as:

"Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." I.C. § 18–4002.

The principal argument of the defendant pertaining to malice aforethought is that

271

the defendant did not have sufficient time to develop a desire to take the life of the deceased, but rather his action was instantaneous and a normal reaction to the physical injury which she had dealt him. In conjunction with the time element, the defendant contends he was incapable of formulating malice aforethought because he was mentally ill and mentally disturbed, and that as a result of this mental illness, acted very impulsively; that he maintained no loyalty to any person, group, or code; he acted like a small child, and with a small child's lack of moral or social censorship; and defendant had no censorship or consciousness of social right or wrong. To give further support to the contention that Snowden could not have the element of malice aforethought, there is argued the proposition that he was intoxicated to such an extent that he was not capable of forming the necessary intent to commit a criminal act, and particularly the act of murder in the first degree. The basis for this contention is I.C. § 18–116:

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or

intent with which he committed the act."

From all the evidence it appears that the defendant was not so far intoxicated as would preclude him from knowing the difference between right and wrong, and being able to conduct himself according to the set social pattern. This is borne out by the defendant's actions in cleansing himself and concealing his clothing and the knife. Immediately after the taking of the life of the deceased, he rode into town with one witness, who testified that although Snowden had been drinking he did not appear to have been drunk. There were several witnesses who saw Snowden immediately before and soon after the homicide, and they testified that the defendant had been drinking but was not drunk. The only testimony offered by Snowden as to whether he had the capacity to form an intent to commit the crime of murder, due to voluntary intoxication, is as follows:

"Q. Do you have an opinion of whether you were drunk Saturday, the 20th of September? A. Well, I was—I would say I was drunk.

"The Court: Are you referring to the 22nd?

"Q. Saturday, the 22nd of September, yes. A. Yes."

Where there is competent, substantial, though conflicting evidence as to a finding or a conclusion of fact reached by the trial

court, it will not be disturbed on appeal. Petersen v. Holland, 79 Idaho 63, 310 P.2d 810; Nelson v. Hoff, 70 Idaho 354, 218 P.2d 345; Summers v. Martin, 77 Idaho 469, 295 P.2d 265; Blue Bell Co. v. Employment Security Agency, 75 Idaho 279, 270 P.2d 1054.

█ From the actions of the deceased, it is apparent no considerable provocation existed for the gruesome and sadistic conduct of the defendant. This court has stated, in State v. Willis, 24 Idaho 252, 132 P. 962, 967:

"* * * 'Murder is the unlawful killing of a human being, with malice aforethought.' In the present case the defendant killed a human being, and his actions indicate malice aforethought. *There was no considerable provocation shown, and the circumstances attending the killing show an abandoned and malignant heart.* The rule is malice is implied for any deliberate and cruel act against another, however sudden, which shows an abandoned and malignant heart, and the facts show there was malice in the acts of the defendant at the time of the killing." [Emphasis added.]

See also State v. Wilson, 41 Idaho 616, 243 P. 359.

█ From the manner in which the knife was used, it can be readily concluded that it was a deadly weapon.

"* * * A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character. The mere fact that an instrument produced death does not establish its character as a deadly weapon, although it may be evidence thereof. * * *" 40 C.J.S. Homicide § 25, pp. 875-876.

Because of the use to which this knife was put and the results of this use, it will be classified as a deadly weapon. By the use of a deadly weapon by one person upon another, and it results in unlawful homicide, then malice may be presumed. It is said in 40 C.J.S. Homicide § 25, p. 874:

"In the absence of circumstances disproving malice, malice may be presumed from the intentional use of a deadly weapon in a deadly and dangerous manner. * * *"

Therefore it is to be concluded there were both express and implied malice on behalf of Snowden immediately prior to the time he took the life of the deceased.

█ No question has been raised by either the State or the defense as to the sanity of the defendant in the trial court, but the State nevertheless introduced testimony to show Snowden knew the differ-

ence between right and wrong at the time of the homicide. The defendant had been in consultation with Dr. Dale Cornell, a physician and surgeon who had a specialty in psychiatry. Dr. Cornell, who was called as a witness by the State of Idaho, testified substantially as follows:

"* * * It is my impression and opinion that he is what is called a psychopathic personality, a sociopathic personality disturbance, of anti-social reaction manifested by not profiting from either experience or punishment and maintaining no real loyalty to any person, group or code, being calloused and hedonistic and showing lack of responsibility, poor judgment and ability to rationalize his behavior."

In his opinion, the psychiatrist stated, the defendant knew the difference between right and wrong. No other witness testified as to the defendant's sanity. Therefore, it is concluded the defendant had the mental ability to reason and had the capacity to formulate malice aforethought.

Degrees of murder are defined by statute as follows:

"All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate arson, rape, robbery, burglary, kidnaping or mayhem, is murder of the first degree. All other kinds of murder are of the second degree." I.C. § 18–4003.

Inasmuch as the defendant took the life of Cora Lucyle Dean, and did so with malice aforethought, it necessarily must follow that he is guilty of murder. This disposes of the third assignment of error.

 The second assignment of error of the defendant is based upon the finding of the court that the defendant's acts in taking the life of Cora Lucyle Dean were willful, deliberate, and premeditated. I.C. § 18–4003 requires first degree homicide to be perpetrated by any kind of willful, deliberate, and premeditated killing, it being conceded that none of the other elements of the statute as to other felonies or means of commission of homicide is present in this case. The test to determine if the killing was willful, deliberate, and premeditated has been set out in State v. Shuff, 9 Idaho 115, 72 P. 664, 668, wherein the court stated:

"* * * The unlawful killing must be accompanied with a deliberate and clear intent to take life, in order to constitute murder of the first degree. The intent to kill must be the result of deliberate premeditation. It must be formed upon the pre-existing reflection, and not upon a sudden heat of

passion sufficient to preclude the idea of deliberation. * * *"

The court further stated in this case while approving an instruction:

"* * * That instruction reads as follows, to wit: 'From these definitions the jury will see that any unlawful killing of a human being, with malice aforethought, is murder; but if nothing further characterizes the offense it is murder of the second degree. To constitute the higher offense there must be superadded, to the general definition above given, willfulness, deliberation, and premeditation. By willfulness is meant that it was of purpose, with the intent that, by the given act, the life of the party should be taken. It must be deliberate and premeditated. By this it is not meant that the killing must have been conceived or intended for any particular length of time. It is sufficient if it was done with reflection and conceived beforehand. And in this view, as I have said before, the deliberate purpose to kill and the killing may follow each other as rapidly as successive impulses or thoughts of the mind. It is enough that the party deliberate before the act—premeditate— the purpose to slay before he gave the fatal blow. But while the purpose, the intent, and its execution may follow thus rapidly upon each other, it is proper for the jury to take into consideration the shortness of such interval in considering whether such sudden and speedy execution may not be attributed to sudden passion and anger, rather than to deliberation and premeditation, which must characterize the higher offense. * * *."

The Supreme Court of Arizona held in the case of Macias v. State, 283 P. 711, 715:

"* * * There need be no appreciable space of time between the intention to kill and the act of killing. They may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer, and, if such is the case, the killing is murder in the first degree * * *."

In the present case, the trial court had no other alternative than to find the defendant guilty of willful, deliberate, and premeditated killing with malice aforethought in view of the defendant's acts in deliberately opening up a pocket knife, next cutting the victim's throat, and then hacking and cutting until he had killed Cora Lucyle Dean and expended himself. The full purpose and design of defendant's conduct was to take the life of the deceased.

The fourth assignment of error is directed at the imposition of the penalty of death

upon the defendant. Punishment for murder is set out in I.C. § 18-4004:

"Every person guilty of murder in the first degree shall suffer death or be punished by imprisonment in the state prison for life, and the jury may decide which punishment shall be inflicted. * * *"

It was stated in State v. Powell, 71 Idaho 131, 227 P.2d 582, 585:

"* * * Upon a plea of guilty, the trial judge is clothed by the statute with the power and duty of fixing the punishment. It is within his sound discretion to determine whether the punishment shall be life imprisonment or death. Unless such discretion is abused, it will not be disturbed by this court. State v. Arnold, supra. [39 Idaho 589, 229 P. 748.]"

The trial court could have imposed life imprisonment, or, as in the instant case, sentenced the defendant to death. It is abuse of discretion we are dealing with, and in particular the alleged abuse of discretion in prescribing the punishment for murder in the first degree as committed by the defendant. To choose between the punishments of life imprisonment and death there must be some distinction between one homicide and another. This case exemplifies an abandoned and malignant heart and sadistic mind, bent upon taking human life. It is our considered conclusion, from all the facts and circumstances, the imposition of the death sentence was not an abuse of discretion by the trial court.

The judgment is affirmed.

PORTER, TAYLOR, and SMITH, JJ., concur.

KEETON, C. J., sat at the hearing but did not participate in the decision.