487 P.2d 686

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Baldemar GOMEZ, Defendant-Appellant.**

**No. 10676.**

Supreme Court of Idaho.

July 26, 1971.

Herman E. Bedke, Burley, for appellant.

W. Anthony Park, Atty. Gen., Martin R. Ward, Chief Deputy Atty. Gen., Boise, and Gordon S. Nielson, Pros. Atty., Burley, for respondent.

SPEAR, Justice.

Following the fatal shooting of Leo Hood in the East Side Bar in Burley, the appellant, Baldemar Gomez, was convicted of murder in the second degree in the district court of the Fifth Judicial District and sentenced to a term of imprisonment not to exceed 21 years upon the judgment of conviction. From that judgment and sentence the appellant appeals to this court.

Appellant came to Burley in the fall of 1969 and obtained employment with the Amalgamated Sugar Company. After work on Saturday, November 1, 1969, appellant purchased some groceries and two six-packs of beer before returning to the labor camp, where he resided. Without eating any supper, appellant began drinking beer with his friend Arturo Garza— the appellant drinking some four or five cans. About 9:00 p. m., appellant left for

Burley where he visited the East Side Bar. While in the bar, appellant sat with some friends at a table, located in the back of the bar-room. Appellant and his friends drank beer at the table until approximately midnight, during which time appellant remembers consuming about seven or eight beers.

At approximately midnight appellant got up to go to the restroom. The evidence is conflicting as to what next transpired. Several witnesses for the prosecution testified that appellant slapped or in some way purposely touched or held Consuelo Lopez, a waitress at the bar. Appellant could recollect no such confrontation. In any event, it is clear that some person, later ascertained to be the victim Leo Hood, grabbed appellant in such a manner as to choke him. Appellant struggled to extricate himself from Hood's grasp, but the more he struggled the harder Hood choked him. After a few moments, the assailant was pulled off appellant, and at approximately the same time, Ernest Ybarra, proprietor of the bar, interceded and directed the appellant toward the front exit. Until this altercation, appellant had not known Hood and had had no prior contact with him. Just before exiting, the appellant asserts he turned and saw Leo Hood following him. The prosecution contends that Hood was not following but merely standing near the back of the bar-room.

Appellant stated he thought Hood was pursuing him, so appellant pulled out a .22 caliber pistol he had been carrying in his belt and pointed it at Hood. The gun discharged and the bullet struck Hood, causing his eventual death. Immediately after the shooting occurred, appellant left the bar and returned to the labor camp.

Appellant reported for work at the beet dump the following Monday, November 3. After work that day appellant heard over the radio that someone had been shot at the East Side Bar on Saturday night. Appel-

lant thereupon left for Parma, where he had lived with his mother prior to coming to Burley.

Appellant was traced to Parma where he was apprehended by a Burley police officer and the sheriff of Canyon County. When arrested, appellant still had the .22 revolver. Appellant was returned to Burley where he was tried and convicted.

In assignments of error 1 and 2, appellant contends that the court erred in not dismissing the charges of first and second degree murder and in adjudging appellant guilty of second degree murder. Assignment 4 alleges that the verdict of the jury fails to conform with the evidence. Each of these assignments is premised on the same fundamental claim—that the shooting was perpetrated without the requisite malice aforethought. In assignment of error 3, appellant asserts that the trial court's sentence of "not more than twenty-one (21) years" was so severe as to amount to an abuse of discretion by the trial court. None of the assignments of error warrant reversal of the trial court's decision.

Malice aforethought is an essential element of the crime of murder. I.C. § 18-4001. According to the Idaho Code, § 18-4002,

"Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart."

■ The essence of appellant's argument is that the cumulative effect of a combination of factors rendered appellant incapable of formulating the requisite intent or malice to commit murder and that the evidence, therefore, will support no more than a conviction of voluntary manslaughter. Defendant alleges these factors include his having consumed over a dozen beers during the evening, being attacked and choked by

Hood, being humiliated as a result of his unwarranted ejection from the bar and being fearful for his life due to his belief that Hood was pursuing him. Appellant points to his own testimony that he did not intend to fire the gun, pointed it toward Hood only to "scare him off," and did not remember pulling the trigger as further indicia of his lack of malice or intent.

From an examination of the applicable law and the record of this case, it is evident that appellant's claim that the circumstances of the shooting will support, at most, a conviction of voluntary manslaughter should not prevail. I.C. § 18–4006 provides in pertinent part, that voluntary manslaughter "is the unlawful killing of a human being, *without malice*, * * * upon a sudden quarrel or heat of passion."

▮ It is the province of the jury to determine whether the evidence in the record only supports a conviction of voluntary manslaughter as appellant contends or, on the other hand, whether there is sufficient proof of malice, to justify a conviction of either first or second degree murder. State v. Gish, 87 Idaho 341, 393 P.2d 342 (1964); State v. Owen, 73 Idaho 394, 253 P.2d 203 (1953); State v. Crea, 10 Idaho 88, 76 P. 1013 (1904).

It is well settled in this jurisdiction:

"Where there is competent and substantial, though conflicting, evidence to sustain a verdict, this court will not re-weigh the evidence or disturb the verdict." State v. Griffith, 94 Idaho 76, 481 P.2d 34, 40–41 (Feb. 16, 1971); State v. Ponthier, 92 Idaho 704, 449 P.2d 364 (1969); State v. Chaffin, 92 Idaho 629, 448 P.2d 243 (1968).

▮ An oft-cited presumption in Idaho law concerning the finding of "malice" is dispositive in this case; therefore we do not discuss the intricacies and interrelationship of "sudden quarrel or heat of passion" and the somewhat confusing concept of adequate provocation. (See Note, Manslaughter in Idaho, 2 Idaho L.R. 87 (1965).)

The essence of the presumption is that where a homicide is committed by the unlawful use of a deadly weapon in a way to indicate an intention to kill (i. e., used in a deadly and dangerous manner), the law presumes malice. State v. Anstine, 91 Idaho 169, 418 P.2d 210 (1966); State v. Snowden, 79 Idaho 266, 313 P.2d 706 (1957). See State v. Buchanan, 73 Idaho 365, 252 P.2d 524 (1953).

From the manner in which the gun was here used, it was properly classified as a deadly weapon. "A deadly weapon is one which is likely to produce death or great bodily injury from the manner in which it is used, and whether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character." State v. Snowden, supra, at 272, 313 P.2d at 709 (quoting 40 C.J.S. Homicide § 25, pp. 875–876). The jury, therefore, could properly have found malice from the evidence in the record concerning the appellant's unlawful use of a deadly weapon in a dangerous way.

▮ The issue of intoxication as a mitigating factor, alluded to by appellant in mentioning his consumption of "over a dozen beers" during the evening of the shooting, deserves a brief comment. Since it was voluntary, any possible intoxication did not make appellant's act less criminal, but may properly have been considered by the trier of fact as negating a necessary finding of a particular purpose, motive, or intent—in this case, malice aforethought. I.C. § 18–116. State v. Sprouse, 63 Idaho 166, 118 P.2d 378 (1941). As indicated above, it is a factual question for the jury to determine whether the intoxication was of such degree as to preclude appellant from formulating the necessary malice. Carey v. State, 91 Idaho 706, 429 P.2d 836 (1967); State v. Snowden, supra. There is enough competent evidence to justify the jury in not finding sufficient intoxication to negate a finding of malice. State v. Griffith, supra; State v. Snowden, supra.

326

Having concluded the conviction of murder in the second degree should be sustained, we can readily discard the appellant's final assignment of error—that the sentence was so unduly severe as to constitute an abuse of discretion by the trial court. The statutory limitations on permissible sentences for second degree murder are prescribed by I.C. § 18–4004:

"Every person guilty of murder in the second degree is punishable by imprisonment in the state prison not less than ten years and the imprisonment may extend to life."

The sentence of "not more than 21 years" is clearly within the statutory limits, and therefore such sentence will not normally be considered an abuse of discretion.

" * * * Pronouncement of sentence to be imposed is within the discretion of the trial court and will not be disturbed by this court in absence of abuse of discretion. A sentence fixed within the limits prescribed by statute will not ordinarily be considered abuse of discretion by the trial court. * * *" State v. Dunn, 91 Idaho 870, 876, 434 P.2d 88, 94 (1967). See State v. Butler, 93 Idaho 492, 464 P.2d 931 (1970); King v. State, 91 Idaho 97, 416 P.2d 44 (1966); State v. Gish, 89 Idaho 334, 404 P.2d 595 (1965), (second appeal. First appeal in 87 Idaho 341, 393 P.2d 342, cited supra, affirmed conviction but remanded for consideration of plea for leniency in sentencing. This appeal is on the sentencing question.)

Since there is nothing in the record to indicate the trial court's sentence is clearly excessive under the circumstances the sentence need not be modified. See State v. Gish, supra; State v. Caron, 105 Ariz. 122, 460 P.2d 176 (1969).

Judgment and sentence affirmed.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.