592 P.2d 68

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Raymond Allen ROLES, Defendant-Appellant.**

**No. 12704.**

Supreme Court of Idaho.

March 14, 1979.

John C. Lynn, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

THOMAS, Judge Pro Tem.

The defendant-appellant Raymond Allen Roles appeals his conviction, following trial

commenced on June 1, 1977, in the Fourth Judicial District Court in Ada County, upon a plea of not guilty to a charge of burglary in the first degree. The defendant seeks to have the conviction reversed on the sole ground that the evidence, as a matter of law, did not warrant the jury in finding, beyond a reasonable doubt, that the defendant possessed the necessary felonious intent which is an essential element of burglary. In light of the assignment of error asserted by the defendant, it will be necessary to review briefly the factual background of the offense charged against this defendant.

On January 25, 1977, at approximately 1:00 a. m., a burglar alarm was set off in a retail furniture store in Boise, Idaho. Upon noticing the alarm, the person monitoring the service for the furniture company alerted the police and turned on a tape recorder which was connected to microphones previously placed in strategic places in the furniture store. This person also notified the owner of the store of the development. The tape recorder picked up the sound of voices and the person operating the monitor subsequently told the police that he had heard the word "safe" in the recorded conversation. When the police arrived at the store, they observed the break-in which had occurred over a canopy on the second floor of the building. In attempting to secure the building, they discovered one Ricarto Shanacropolous inside near the back door. Shanacropolous indicated to the police that there was another man in the building, whereupon the police began a search which lasted for up to one and a half hours. When the owner of the building arrived he directed the police to a storage area in the basement which had not been thoroughly searched. After two officers had searched the storage room, another officer went in with a flashlight and eventually found the defendant, Raymond Allen Roles, hiding behind some boxes on a high shelf. Roles and Shanacropolous were taken in custody to the police station where questioning began. The defendant appellant Roles made oral and written statements to the police describing the events leading up to the burglary. Shanacropolous also made statements to the police.

The defendant Roles was charged with the crime of burglary in the first degree upon an information filed by the prosecuting attorney for Ada County and to such information he entered a plea of not guilty. Prior to trial Roles filed a Notice of Intent to Rely upon Mental Disease or Defect. He was subsequently examined by a psychiatrist on May 12, 1977, pursuant to court order, and trial was commenced on June 1, 1977.

Because the defendant questions the sufficiency of the evidence adduced at the trial to sustain the jury's findings, it would be appropriate at this point to highlight the testimony offered at the trial. The state presented evidence in support of the factual matters previously referred to and, in addition the officers involved in the arrest of the two participants in the crime testified as to their observation of the defendant as to whether or not he appeared to be under the influence of alcohol or drugs. Each of the officers indicated they had seen no indication of such. The state made a motion to dismiss the defense of mental disease or defect, which motion was denied.

The testimony offered by the defense can be summarized somewhat in this manner: evidence was admitted that the defendant Roles had been taking drugs for over a period of a week prior to the burglary, and drugs and alcohol the day of the burglary. Testimony was offered by the defendant's girlfriend and her mother that on the day of the burglary Roles had been nervous and did not want to be around people. He had ripped off his shirt that morning and Shanacropolous testified that Roles had jumped from his moving car on the way to the retail furniture store and had tried to break into a men's room at a service station to "get money." He also stated that during the burglary Roles sat on the floor and rocked back and forth and did not seem to respond rationally to conversation. The psychiatrist called by the defense testified that, according to the information he gathered from interviewing the participants in the crime, in his opinion Roles had "no

cognizant awareness of wrongfulness" and that he was in an "organic confusional state" and probably had not the ability to control his behavior. The doctor further testified that outside the pattern of drug abuse, defendant had no mental defect and that strictly speaking his condition was not a mental disease or defect.

After the jury reached a verdict of guilty, Roles was subsequently sentenced to a term of not to exceed fifteen years in the jurisdiction of the Idaho State Board of Correction.

The appropriate statutory background in this case is provided by I.C. §§ 18–201, –207 to –209.[1] The issue on appeal in this case is whether as a matter of law the voluntary taking of drugs and/or alcohol impaired the ability of the defendant to form the requisite intent. Hence, in resolution of such an issue it appears that we must find our direction from the criminal cases which have discussed the question of mental capacity of persons as affected by voluntary intoxication. In the majority of cases where this question has been raised it has been held that the effect of the voluntary taking of drugs was the same whether intoxication was from drugs or alcohol. See Annot., 73 A.L.R.3d 98 (1976). The rationale of the majority of the cases appears to be that stated in *State v. Roisland*, 1 Or.App. 68, 459 P.2d 555, 559 (1969):

> "We know of no reason which requires us to limit the scope of the word 'intoxication' as used in [the statute] to the precise forms of mental aberration produced by excess consumption of alcohol. The voluntary use of intoxicants other than alcohol is comparable to the voluntary use of alcohol. The intent is the same. The result in the broad sense of the word is the same. There is no reason why the culpability should not be the same."

The rule in Idaho is provided by I.C. § 18–116.[2] Through the evidence referred

---

[1]. "18–201. PERSONS CAPABLE OF COMMITTING CRIMES.—All persons are capable of committing crimes, except those belonging to the following classes:

"1. Persons who committed the act or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent.

"2. Persons who committed the act charged without being conscious thereof.

"3. Persons who committed the act or made the omission charged, through misfortune or by accident, when it appears that there was not evil design, intention or culpable negligence.

"4. Persons (unless the crime be punishable with death) who committed the act or made the *omission charged, under threats* or *menaces* sufficient to show that they had reasonable cause to and did believe their lives would be endangered if they refused."

"18–207. MENTAL ILLNESS AS DEFENSE.—(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

"(2) As used in this act, the terms 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct."

"18–208. ADMISSIBILITY OF EVIDENCE OF MENTAL DISEASE—CONSIDERATION BY JURY CONCERNING PUNISHMENT.—(1) Evidence that the defendant suffered from a mental disease or defect is admissible whenev-

er it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense.

"(2) Whenever the jury or the court is authorized to determine or to recommend whether or not the defendant shall be sentenced to death or imprisonment upon conviction, evidence that the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect is admissible in favor of sentence of imprisonment."

"18–209. MENTAL ILLNESS AN AFFIRMATIVE DEFENSE—NOTICE OF PURPOSE TO RELY THEREON—VERDICT.—(1) Mental disease or defect excluding responsibility is an affirmative defense.

"(2) Evidence of mental disease or defect excluding responsibility is not admissible unless the defendant, at the time of entering his plea of not guilty or within ten (10) days thereafter or at such later time as the court may for good cause permit, files a written notice of his purpose to rely on such defense.

"(3) When the defendant is acquitted on the ground of mental disease or defect excluding responsibility, the verdict and the judgment shall so state."

[2]. "18–116. INTOXICATION NO EXCUSE FOR CRIME.—No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence

to above the defendant presented the defense that he was incapable of forming the necessary intent, an element of the crime of burglary, I.C. § 18–1401, and it was a question for the trier of fact to determine whether defendant's intoxication or voluntary use of drugs reached that level. *State v. Gomez*, 94 Idaho 323, 487 P.2d 686 (1971); *Carey v. State*, 91 Idaho 706, 429 P.2d 836 (1967). Defendant's theory was submitted to the jury by appropriate instructions and the question was resolved against the defendant.

To invoke the oft repeated maxim of law that an appellant court will not disturb a verdict based upon substantial and conflicting evidence, it would be appropriate to review briefly the state of the evidence. Several officers who questioned the participants in the crime, including the defendant, testified that none of them observed an indication that either party was under the influence of drugs, particularly the defendant; none of them smelled any alcohol. One officer who had worked with the City-County Narcotics Division was with the defendant on and off for a period of one and a half to two hours. He discussed the *Miranda* rights with the defendant, taking oral and written statements from him. A statement written within a few hours after the incident exhibited rational thought processes and was written clearly and legibly. This latter officer testified that he observed the defendant, walk, light a cigarette, and converse in a very relaxed, normal manner and further testified that he was looking for any sign that would indicate the influence of drugs, but did not see or observe any such. It should not be ignored that the defendant had succeeded in finding a hiding place in the store where he was found only after a thorough search which consumed an hour and a half. *Cf. Ex parte Seyfried*, 74 Idaho 467, 264 P.2d 685 (1953) (one's intent may be proved by one's acts and conduct); *State v. Liston*, 95 Idaho 849, 521 P.2d 1028 (1974) (one's intent may

be proved by one's acts and conduct). The officer testified that when he ordered defendant down from the shelves, the defendant started to come down "ladder like." The defendant's partner in the crime testified that before entry into the building the defendant stated he wanted to go through with the break-in because he needed money for drugs. The tape recording of the voices in the store was played for the jury although the conversation was very short and not too clear.

While the evidence presented by the defense tended to show that the defendant acted strangely, the jury was justified in weighing the evidence and finding the behavior was a result of some other condition than mental disease and defect. In weighing the testimony of the psychiatrist it should be noted that the psychiatrist was depending upon information given him by Roles and his partner nearly four months after the crime. *Cf. State v. Myers*, 94 Idaho 570, 494 P.2d 574 (1972) (the jury was not bound to accept qualified experts' opinions as to defendant's sanity as conclusive, but was to give the opinions such weight as it found them to be entitled). The doctor never talked with the officers or listened to the tape recording and did state that if the facts were different than those represented to him he would have to re-assess his position.

All in all, it appears that the jury competently weighed the evidence and reached a verdict which should not be disturbed on appeal. The evidence is sufficient to support the verdict. Judgment of conviction is hereby affirmed.

SHEPARD, C. J., McFADDEN and DONALDSON, JJ., and SCOGGIN, J. Pro Tem., concur.

of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive or intent with which he committed the act."