912 P.2d 653

**Ronnie Lee FENSTERMAKER, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 21498.

Court of Appeals of Idaho.

Aug. 4, 1995.

Petition for Review Denied Sept. 22, 1995.

Ronnie L. Fenstermaker, Boise, pro se appellant.

Alan G. Lance, Atty. Gen.; Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

Ronnie Lee Fenstermaker appeals from a judgment and order by the district court dismissing his application for post-conviction

relief. Fenstermaker contends that the district court erred by denying relief without conducting an evidentiary hearing on claims raised in the application. We affirm.

## BACKGROUND

Fenstermaker pled guilty to attempted second degree murder and to assault with intent to commit a serious felony after he shot and wounded a woman jogger whom he had intended to abduct and rape. During the attack, when he endeavored to shoot her a second time, his pistol misfired and the woman escaped. Fenstermaker received a fifteen-year determinate sentence on the attempted murder charge and an indeterminate ten-year sentence for the assault conviction, to be served consecutively. The judgments of conviction and sentences were upheld on an earlier appeal. *State v. Fenstermaker*, 122 Idaho 926, 841 P.2d 456 (Ct. App.1992) (hereafter referred to as case no. 19888).

In 1994, Fenstermaker filed an application for post-conviction relief. The application was summarily dismissed by the district court pursuant to I.C. § 19–4906(b). This section provides that:

When a court is satisfied, on the basis of the application, the answer or motion, and the record, that the applicant is not entitled to post-conviction relief and no purpose would be served by any further proceedings, it may indicate to the parties its intention to dismiss the application and its reasons for doing so. The applicant shall be given an opportunity to reply within 20 days to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed or grant leave to file an amended application or, direct that the proceedings otherwise continue. Disposition on the pleadings is not proper if there exists a material issue of fact.

## ISSUES

Fenstermaker argues that his application asserted three grounds for relief which should not have been summarily dismissed by the district court without an evidentiary hearing. Those grounds were: (1) he was entitled to correction of his sentence because the trial court failed to apply the standards set forth in I.C. § 19–2523 for consideration of mental illness in determining the sentences to be imposed; (2) he was deprived of the effective assistance of counsel because his attorney failed to inform him of the terms of a plea agreement; and (3) he should not have been convicted of attempted second degree murder because that crime does not exist in Idaho.

From our review of the record, we conclude that none of these claims have merit and that the district court correctly dismissed Fenstermaker's application without holding an evidentiary hearing.

## DISCUSSION

■ An application for post-conviction relief initiates a proceeding which is civil in nature. *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State*, 92 Idaho 827, 830, 452 P.2d 54, 57 (1969). Such an application, however, differs from a complaint in an ordinary civil action because an application for post-conviction relief must contain much more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant, and affidavits, records or other evidence supporting its allegations must be attached, or the application must state why such supporting evidence is not included with the petition. I.C. § 19–4903. In other words, the application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal.

■ Idaho Code § 19–4906 authorizes summary disposition of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact which, if resolved in the applicant's favor, would entitle the petitioner to the requested relief. If such a factual issue is presented, an eviden-

tiary hearing must be conducted. *Gonzales v. State*, 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct.App.1991); *Hoover v. State*, 114 Idaho 145, 754 P.2d 458 (Ct.App.1988); *Ramirez v. State*, 113 Idaho 87, 741 P.2d 374 (Ct.App. 1987). Summary dismissal of a petition for post-conviction relief may be appropriate, nonetheless, even where the State does not controvert the applicant's evidence, for the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App.1994); *Baruth v. Gardner*, 110 Idaho 156, 159–60, 715 P.2d 369, 372–73 (Ct.App. 1986).

## I. Mental Illness

Idaho Code § 19-2523 permits the court to consider evidence offered with respect to the defendant's mental condition, in addition to other criteria provided by law, in determining the sentence to be imposed. The statute also provides that, if the defendant's mental condition is a significant factor, the court shall consider such factors as:

(a) the extent to which the defendant is mentally ill;

(b) the degree of illness or defect and level of functional impairment;

(c) the prognosis for improvement or rehabilitation;

(d) the availability of treatment and level of care required;

(e) any risk of danger which the defendant may create for the public, if at large, or the absence of such risk;

(f) the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law at the time of the offense charged.

In his application for post-conviction relief, Fenstermaker asserted that the district court failed to consider these factors. However, the record in the underlying criminal proceeding indicates otherwise. The clerk's minutes in case no. 19888 reflect that, when the district court accepted Fenstermaker's pleas of guilty, the court ordered preparation of a psychological evaluation in addition to a presentence report. Later, during the sentencing proceeding, the psychological evaluation was reviewed by the district court. The transcript of that proceeding contains the district court's discussion of its consideration of the information contained in the evaluation. The court said:

First of all, this is obviously a case that no rational person would say that this is a case where the court should grant probation, because the facts in the charges are simply too serious to even suggest that type of possibility.

Secondly, I have to consider factors of whether or not—factors relating to rehabilitation; factors relating to the protection of society; factors relating to deterrence, both general and specific deterrence; also the consideration of the punishment; and also consideration of proportionality.

. . . . .

As far as the question of rehabilitation is concerned, I think that Dr. Engle has summed it up in his report, that Mr. Fenstermaker is the sort of individual who learns best from behavioral consequences as opposed to verbal insight.

Behavioral consequences in this case is a prison sentence. I think it's clear that this stands out throughout Dr. Engle's evaluation and report that he does not feel that the defendant is a good candidate for therapeutic measures or rehabilitative measures. And I agree with that.

I feel that this is a case where society needs to be protected. I feel this is a case that calls out for punishment because of the seriousness of the crime.

I feel that the rehabilitation potential as far as Mr. Fenstermaker is very slim indeed, and that a substantial prison sentence is the only way to protect society from Mr. Fenstermaker.

I won't go through all the details of this report. I do have to recognize, of course, that the defendant does not have too much in the way of a prior criminal record. But what he does have, as the prosecutor has indicated, is frightening.

This record demonstrates that the district court adequately considered the sub-

stance of the factors suggested in I.C. § 19–2523(1)(a) through (f) in arriving at its sentencing decision. Similar to a review of the criteria set forth in I.C. § 19–2521 for placing a defendant on probation or imposing imprisonment, we hold that the sentencing court is not required to check off or recite each of the factors in I.C. § 19–2523 for the benefit of the defendant. *State v. Burroughs*, 107 Idaho 195, 687 P.2d 585 (Ct.App. 1984).

Accordingly, we conclude Fenstermaker's claim that the sentencing court committed some error in not explicitly reaching conclusions with respect to each of the factors set forth in I.C. § 19–2523(1) does not serve as a basis for post-conviction relief. The district court below correctly dismissed that claim, without an evidentiary hearing, in considering Fenstermaker's application for post-conviction relief.

## II. Effective Assistance of Counsel

Next, Fenstermaker contends that the district court should have held an evidentiary hearing on the question of whether Fenstermaker was deprived of the effective assistance of counsel because Fenstermaker's attorney allegedly failed to inform him of "changes" in the terms of a plea agreement. In his application for post-conviction relief, Fenstermaker averred that, prior to pleading guilty, his attorney told him that a plea agreement had been reached whereby Fenstermaker would plead guilty to only one charge, with a maximum sentence of fifteen years and evidently with a mandatory minimum period of incarceration of between three and seven years.

However, the record belies the existence of the basis for such a claim. The minutes in case no. 19888 show that, when Fenstermaker tendered his pleas of guilty to the court on both charges, Fenstermaker's attorney stated to the court that there had not been any plea negotiations. Fenstermaker was then questioned under oath, and told the court that no promises of leniency or threats had been made to induce the pleas and that he understood the penalties which could be imposed upon his plea of guilty to each of the charges. Thus, Fenstermaker's present

claim that he believed a plea agreement existed and that he would have to plead guilty to only one charge is conclusively disproven by the record. Moreover, at the sentencing hearing, the Ada County prosecutor, Mr. Bower, told the judge:

It's obvious in this case that the state has taken this case very seriously.

I was prepared to try this case and was unwilling to make negotiations that dealt with sentencing, or with charge bargaining on this case, from the standpoint of what could be proved.

After addressing information contained in the psychological evaluation, Mr. Bower requested a determinate sentence of fifteen years on the attempted murder charge and a consecutive sentence of ten years on the assault charge, with five years fixed as a minimum period of confinement for that conviction. Neither Fenstermaker nor his attorney disputed the prosecutor's disavowal of any plea bargaining or negotiation of the charges or proposed sentences, nor did either of them voice any objection to the prosecutor's requested sentences—they instead argued only for sentences of lesser terms.

Faced with this record, the district court properly was "satisfied, on the basis of the application ... and the record, that the applicant is not entitled to relief and no purpose would be served by any further proceedings." I.C. § 19–4906(b); *Phillips v. State*, 108 Idaho 405, 700 P.2d 27 (1985); *Clark v. State*, 92 Idaho 827, 452 P.2d 54 (1969). We uphold the district court's conclusion.

## III. Attempted Second Degree Murder

Finally, Fenstermaker claims that he should not have been convicted of attempted second degree murder, on the supposition that such an offense does not exist in Idaho. We disagree.

Idaho Code § 18–306 provides:

Every person who attempts to commit any crime, but fails, or is prevented or intercepted in the perpetration thereof, is punishable, where no provision is made by law for the punishment of such attempts, as follows: ...

In *State v. Otto,* 102 Idaho 250, 629 P.2d 646 (1981), the Idaho Supreme Court considered the applicability of this statute on a charge of attempted murder. A majority of the Court held that the facts of the case established a solicitation to commit murder but were not sufficient to reach the extent or degree required to convict the defendant of an attempt to murder. Addressing I.C. § 18–306 in his dissenting opinion, Chief Justice Bakes observed:

> In the present case, the legislature has enacted a statute making it a crime to attempt to commit any crime, I.C. § 18–306, which includes, of course, an attempt to commit murder. The obvious purpose of the legislation is to protect the public from acts identifiably linked with criminal intent and indicating that the perpetrator is attempting to carry out his intent or criminal design, thereby creating a danger to the public. In the instant case, the defendant's intent to commit the target crime of first degree murder is more than evident. [Underlying facts omitted.] The defendant's intent to murder Captain Ailor was clear and, under the circumstances, the acts of the defendant were more than sufficient to support a conviction for attempted murder under our statute. The defendant had in fact done everything necessary on his part to kill Captain Ailor. All that he had to do was wait for the result. Such a state of events clearly establishes an attempt. [Citations omitted.]

102 Idaho at 256, 629 P.2d at 652.

Idaho Code § 18–4001 defines the crime of murder as the unlawful killing of a human being with malice aforethought or by the intentional application of torture to a human being, which results in the death of a human being. Pursuant to I.C. § 18–4003, certain murders are classified as murder of the first degree; all other kinds of murder are of the second degree. The distinction between degrees of murder exists for the purpose of punishment; murders of the first degree are punishable by death or imprisonment for life, whereas murders of the second degree are punishable by imprisonment for not less than ten years and the imprisonment may extend to life. I.C. § 18–4004. This distinction makes no difference in Fenstermaker's case, inasmuch as his sentence of fifteen years (which was upheld on direct appeal) was permissible for a conviction either on a charge of attempted first degree murder or on a charge of attempted second degree murder. *See* I.C. § 18–306(1) (1993).[1]

 Recently, the Idaho Supreme Court held: "*Attempted* felony murder is not a crime in Idaho. Instead, there is either the crime of murder, or the crime of attempt to commit a crime, in which the state bears the burden of proving that the defendant *intended* to commit the crime." *State v. Pratt,* 125 Idaho 546, 558, 873 P.2d 800, 812 (1993) (emphasis in original). In other words, if in the course of the commission of a felony, the defendant attempts to murder a victim, then the defendant evidently cannot be charged with "attempted felony murder," but the defendant nonetheless certainly could be charged either with attempted first degree murder, if the nature of the attempted murder or the target of the crime otherwise is within the classifications found in I.C. § 18–4003(a) through (f), *see State v. Wood,* 125 Idaho 911, 917, 876 P.2d 1352, 1358 (1994) (on rehearing), or attempted murder in the second degree if the attempted murder was not one of those described in subsections (a) through (f) of I.C. § 18–4003.

In his brief on appeal, Fenstermaker poses the following argument:

(a) The sentencing court found him guilty of attempted second degree murder, an offense which does not exist in the state of Idaho. (In support of this proposition, Fenstermaker cites decisions from Alaska and South Dakota to the effect that attempted second degree murder is not a crime in those jurisdictions.)

(b) The crime of second degree murder does not contain an element of intent.

(c) An attempt to commit a crime requires a specific intent to commit the crime in question.

---

1. Idaho Code § 18–306 was amended in 1994 to provide that if the offense so attempted is punishable by imprisonment for life or by death, the person guilty of the attempt may be imprisoned for a term not exceeding fifteen years. 1994 Idaho Sess.Laws, ch. 131, § 6 p. 298.

(d) Therefore by logical definition there can be no attempted second degree murder.

This "logic" is flawed. First, by virtue of I.C. § 18–306, attempted second degree murder is a criminal act and punishable as such in Idaho, notwithstanding the rules which may exist in the states of Alaska and South Dakota. Second, contrary to Fenstermaker's assertion, it is well settled that the crime of second degree murder does indeed involve an element of intent. In *State v. Van Vlack,* 57 Idaho 316, 65 P.2d 736 (1937), our Supreme Court stated: "Under our statute, murder in the second degree must have malice aforethought, which might be expressed or implied, and the jury was so instructed in instruction No. 7, *supra*.[2] ... Intent to take life or the mental state of having an abandoned and malignant heart which means, of course, a condition of mind and which therefore is a mental state is the essential ingredient of murder in the second degree." 57 Idaho at 364, 65 P.2d at 758. *See also State v. Birrueta,* 98 Idaho 631, 633, 570 P.2d 868, 870 (1977) ("Intent to kill is an element of murder in the second degree."); *State v. Atwood,* 105 Idaho 315, 318, 669 P.2d 204, 207 (Ct.App.1983) ("In Idaho the elements of the crime of murder in the second degree are: (a) an unlawful killing, (b) the intent to kill, and (c) malice."). Finally, accepting our Supreme Court's statement in *Pratt* that "the crime of attempt to commit a crime, in which case the state bears the burden of proving that the defendant *intended* to commit the crime" (125 Idaho at 558, 873 P.2d at 812 (emphasis in original)) requires a specific intent, the record is clear in this case that Fenstermaker intended to commit second degree murder during his attack on the victim when he attempted but failed to consummate that crime because his gun misfired and the victim escaped.

■ Fenstermaker makes the further argument that because his attempt to murder occurred while he was endeavoring to kidnap and rape the victim, the attempted murder was an attempted felony murder which, under *Pratt,* is not a crime. However, this argument disregards the specificity of the allegations in the Information filed by the Ada County prosecutor. The attempted murder charge against Fenstermaker does not purport to cover commission of the crime as an attempted felony murder event. The charging instrument reads:

## COUNT I

That the defendant, RONNIE LEE FENSTERMAKER, on or about the 20th day of November, 1991, in the County of Ada, State of Idaho, did wilfully, unlawfully, deliberately, and with malice aforethought, but without premeditation, attempt to kill and murder [J.M.], a human being, by aiming a Taurus 9mm handgun at her and attempting to discharge the weapon.

The State's burden to prove the elements of the crime alleged in Count I does not include any showing of the commission of a felony during the event described as attempted second degree murder. In this regard, the charge against Fenstermaker for attempted second degree murder was alleged correctly and consistently with the Supreme Court's subsequent decision in *Pratt.* The controlling factor is not what Fenstermaker erroneously could have been charged with, but rather that he was correctly charged. *See e.g., State v. Wood* (on rehearing, 125 Idaho at 917, 876 P.2d at 1358, conviction insofar as including attempted felony murder is vacated, but simultaneous conviction and sentence imposed for the same act, as attempted first degree murder, is affirmed).

We conclude that I.C. § 18–306 permits prosecution for a charge of attempted second degree murder. Accordingly, we uphold the district court's dismissal of Fenstermaker's claim to the contrary.

---

2. Instruction no. 7 appears in the Court's opinion at page 352 of volume 57 of the Idaho Reports, and at 65 P.2d, page 752. In part, this instruction recited relevant language from the statutory definitions of murder and malice aforethought as found in sections 17–1101 and 17–1102, Idaho Code Annotated. Those sections have been recodified and presently appear as I.C. §§ 18–4001 and 18–4002.

## CONCLUSION

The district court properly held that Fenstermaker's application for post-conviction relief did not raise any claim upon which relief should be granted. Concomitantly, the district court did not err in dismissing the application without an evidentiary hearing.

The judgment and order dismissing the application for post-conviction relief is affirmed.

PERRY, J., concurs.

LANSING, Judge, specially concurring.

I concur with parts I and II of the opinion of the Court. I also agree with the ultimate conclusions in Part III that the offense of attempted second degree murder exists in Idaho and that the defendant's conviction should be upheld. I write separately because, in my view, the rationale stated in the Court's opinion that intent to kill is *always* an element of second degree murder is inaccurate and over-simplifies a complex and ill-defined area of Idaho law. I proceed with some reluctance, for an explanation of my disagreement with my colleagues requires a venture into the murky waters of Idaho's homicide statutes which are, in my view, fraught with ambiguity and imprecision, particularly with respect to the mental state required for commission of second degree murder.

Murder, other than torture murder, is defined by I.C. § 18–4001 as: "The unlawful killing of a human being with malice

aforethought." The circumstances in which murder, as defined in I.C. § 18–4001, will constitute murder in the first degree are enumerated in I.C. § 4003(a) through (f).[3] Subsection (g) of I.C. § 18–4003 defines murder of the second degree to be all kinds of murder that are not described elsewhere in that statute as murder in the first degree. Thus, second degree murder is defined largely by what it is not.

Disregarding the possibility of second degree torture murder, these statutes tell us that second degree murder is the "unlawful killing of a human being with malice aforethought" when none of the circumstances identified in I.C. § 18–4003(a)–(f) are present. It is clear that, to be second degree murder, a killing need not be "wilful, deliberate and premeditated," for the presence of those mental elements would elevate the offense to first degree murder under I.C. § 18–4003(a). Consequently, the only mental element specified for second degree murder is "malice aforethought."

Regrettably, that term is not statutorily defined with any clarity. Idaho Code § 18–4002 does address malice aforethought, but it is debatable whether that section provides a definition of malice or only refers to how malice may be proved. It states:

Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears, or when the circumstances attending the

---

**3.** I.C. § 18–4003 provides:

(a) All murder which is perpetrated by means of poison, or lying in wait, or torture, when torture is inflicted with the intent to cause suffering, to execute vengeance, to extort something from the victim, or to satisfy some sadistic inclination, or which is perpetrated by any kind of wilful, deliberate and premeditated killing is murder of the first degree.

(b) Any murder of any peace officer, executive officer, officer of the court, fireman, judicial officer or prosecuting attorney who was acting in the lawful discharge of an official duty, and was known or should have been known by the perpetrator of the murder to be an officer so acting, shall be murder of the first degree.

(c) Any murder committed by a person under a sentence for murder of the first or second

degree, including such persons on parole or probation from such sentence, shall be murder of the first degree.

(d) Any murder committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, kidnapping or mayhem is murder of the first degree.

(e) Any murder committed by a person incarcerated in a penal institution upon a person employed by the penal institution, another inmate of the penal institution or a visitor to the penal institution shall be murder of the first degree.

(f) Any murder committed by a person while escaping or attempting to escape from a penal institution is murder of the first degree.

(g) All other kinds of murder are of the second degree.

killing show an abandoned and malignant heart.

If Section 18–4002 is viewed as a definition of malice, it appears that intent to kill is not in itself an essential element of second degree murder, for an "abandoned and malignant heart," as an alternative to intent to take a life, would satisfy the malice element. The interpretation that Section 18–4002 defines two mental states, either of which will suffice for second degree murder, is supported by *State v. Snowden,* 79 Idaho 266, 272, 313 P.2d 706, 709 (1957). There the Idaho Supreme Court said the evidence established that there were *both* express and implied malice on the defendant's part.

The majority relies upon the following statement from *State v. Van Vlack,* 57 Idaho 316, 364, 65 P.2d 736, 758 (1937), for the proposition that second degree murder requires intent:

Intent to take life or the mental state of having an abandoned and malignant heart which means, of course, a condition of mind and which therefore is a mental state is the essential element of murder in the second degree.

This statement, in which the Idaho Supreme Court was obviously drawing from the statutory language from I.C. § 18–4002, is more ambiguous than enlightening. It reasonably could be interpreted to mean, as the majority supposes, that the mental state of having "an abandoned and malignant heart" is equated to the intent to take a life, so that only one mental state, the intent to kill, is referenced in the quoted sentence. The statement could be as readily interpreted, however, to mean that *either* intent to take a life *or* the mental state of having an abandoned and malignant heart will satisfy the mental ingredient for murder in the second degree.

In *State v. Birrueta,* 98 Idaho 631, 633, 570 P.2d 868, 870 (1977), the Idaho Supreme Court did state unequivocally, "Intent to kill is an element of murder in the second degree." However, the continuing authority of that statement is drawn into question by two more recent Supreme Court decisions, *State v. Aragon,* 107 Idaho 358, 690 P.2d 293 (1984)

and *State v. Lankford,* 116 Idaho 860, 781 P.2d 197 (1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 803 (1990). In *Aragon* the Court considered the propriety of jury instructions distinguishing between first and second degree murder. The Court approved a jury instruction which defined malice as a state of mind manifested by an intentional or deliberate *act* and which instructed the jury that malice may be express or implied. The Court went on to state:

Further, the jury was instructed that if nothing more than malice, or the intent to do an unlawful act, was proven beyond a reasonable doubt, then the crime could not be first degree murder. The jury was instructed that if it could find beyond a reasonable doubt three other elements— wilfulness, deliberation and premeditation—then the defendant was guilty of first degree murder. *Malice, the intent to act feloniously, was properly distinguished from wilfulness, the intent to take life,* premeditation, conceived beforehand, and deliberation, done with reflection. The jury was properly instructed on the additional elements necessary to prove first degree murder, and thus there was no error.

107 Idaho at 363, 690 P.2d at 298 (emphasis added). This passage from *Aragon* clearly expresses that the intent necessary for malice can be satisfied by the mere intent to perform the unlawful act that resulted in the death, without any intent to cause death. The latter intent—the intent to take a life— was said to be "properly distinguished from" the intent required for malice and, hence, for second degree murder.[4]

In *Lankford,* the Supreme Court held that the malice aforethought element for first degree murder was satisfied by the fact that the killing was committed in the perpetration of a robbery. In discussing the malice aforethought component of murder, the Court quoted, with apparent approval, from W. La-Fave and A. Scott, Jr., CRIMINAL LAW § 67 Murder—"Malice Aforethought" and "Living Human Being" pp. 528–530 and § 7

---

**4.** This statement in *Aragon* appears, however, to be directly in conflict with I.C. § 18–4002 which

says that malice includes "a deliberate intention to take away the life of a fellow creature."

"Felony Murder" pp. 545–547 and 554 (1972), including the following discussion:

Murder is a common law crime whose complete development required several centuries. Though murder is frequently defined as the unlawful killing of another "living human being" with "malice aforethought," in modern times the latter phrase does not even approximate its literal meaning. Hence it is preferable not to rely upon that misleading expression for an understanding of murder but rather to consider the various types of murder (typed according to the mental element) which the common law came to recognize and which exist today in most jurisdictions:

(1) intent-to-kill murder;

(2) intent-to-do-serious-bodily-injury murder;

(3) depraved-heart murder; and

(4) felony murder.

. . . .

At first the judges in fact did require for murder that the defendant actually have a previously thought-out (i.e., premeditated) intent to kill, though probably the spite, etc., was never actually necessary.

. . . .

Thereafter the judges started to invent some new types of murder where there existed no premeditated intent to kill. First of all, when the defendant intentionally killed his victim in a heat of passion aroused in him by the conduct of the victim—the issue being whether the defendant should be guilty of murder or of voluntary manslaughter—the judges decided that manslaughter required that the defendant's passion be reasonable.

. . . .

Secondly, when the defendant unintentionally killed another person in the commission of a felony—as where A set fire to B's house (arson) and accidentally B or a member of his family was burned to death—the judges held this to be murder ("felony murder"), though the defendant did not intend to kill at all and a fortiori did not premeditate a killing.

. . . .

The judges still continued to say that murder is committed by one who unlawfully kills another "with malice aforethought," now however adding the phrase "express or implied," the word "implied" covering the four situations just described wherein literally there exists no premeditated intent to kill. Modern courts and legislatures still frequently define murder in terms of "malice aforethought, express or implied," by which they mean the same types of murder as those which the English judges ultimately recognized, including felony murder, depraved-heart murder, intent-to-do-serious-bodily-injury murder and murder committed in an unreasonable passion.

116 Idaho at 866–867, 781 P.2d at 203–04. This discussion confirms that malice aforethought may include a "depraved heart" state of mind (i.e., an "abandoned and malignant heart"), without necessarily requiring an intent to kill.

In view of the *Van Vlack, Aragon* and *Lankford* decisions interpreting Idaho's homicide statutes, I cannot conclude, as does the majority, that an intent to kill is a required element of second degree murder. Rather it appears that a killing may amount to murder where the perpetrator acted with intent to kill *or* with a state of mind that can be characterized as an "abandoned and malignant heart,"[5] and perhaps, in view of the

---

5. I have found no explanation of what constitutes an "abandoned and malignant heart" in the Idaho case law. However, "depraved heart" murder is described in W. LaFave and A. Scott, Jr., SUBSTANTIVE CRIMINAL LAW § 7.4 Depraved–Heart Murder 199, 202–03 (1986) as follows:

Extremely negligent conduct, which creates what a reasonable man would realize to be not only an unjustifiable but also a very high degree of risk of death, or serious bodily injury to another or to others—though unaccompanied by any intent to kill or do serious bodily injury—and which actually causes the death of another, may constitute murder.

. . . .

The following types of conduct have been held, under the circumstances, to involve the very

discussion in *Aragon*, the mental element may also be satisfied by an intent to perform the felonious act that resulted in the victim's death but without intent to kill.

This does not mean, however, that there is no crime of attempted second degree murder. Although the Idaho Supreme Court held in *State v. Pratt*, 125 Idaho 546, 558, 873 P.2d 800, 812 (1993), that attempted felony murder is not a crime in Idaho because intent is not an element of felony murder, I.C. § 18–4003(d), it is apparent that attempted first degree murder can be prosecuted under other subsections of I.C. § 18–4003 where intent to kill is an element of the completed crime. *See State v. Wood*, 125 Idaho 911, 917, 876 P.2d 1352, 1358 (1994). In other words, some types of first degree murder may be "attempted" and others may not, depending upon whether intent to kill would be an element of the murder offense if it were completed.

Although the Idaho statutes do not separate second degree murder into categories in the way that first degree murder is categorized under Section 18–4003, it appears that second degree murder may be accomplished with any of at least two and perhaps three distinct mental states, one of which is intent to kill. Undoubtedly, there can be no attempted second degree murder where the mental state is "an abandoned and malignant heart" or an intent to commit a felonious act but without intent to kill, for *Pratt* stands for

the proposition that there can be no "attempt" to do that which is not intended. This does not, however, preclude recognition of a crime of attempted second degree murder with a mental state of intent to kill. Accordingly, I conclude that attempted second degree murder is a cognizable offense in this State, but only where intent to kill is present.

It follows that, because the offense of attempted second degree murder does exist under Idaho law, Fenstermaker's challenge to his conviction is without merit.[6]

It is with hesitation that I advance the view that intent to kill is not required for second degree murder, for it appears to be a common understanding of members of the bench and bar in this State that intent to kill is an element of that offense. The common understanding, however, appears not to be sustained by the statutes or judicial precedent. This case well illustrates the need for modernization of Idaho's homicide statutes which, with periodic amendments, date back to 1864[7], which are riddled with such archaic and obscure terms as "malice aforethought" and "abandoned and malignant heart," and which have long presented perplexing problems of interpretation and application for our trial and appellate courts. *See State v. Pratt*, 125 Idaho 546, 556–58, 873 P.2d 800, 810–11 (1993); *Yon v. State*, 124 Idaho 821, 864 P.2d 659 (1993); *State v. Lankford*, 116 Idaho 860, 866–67, 781 P.2d 197, 203–04 (1989); *State v.*

---

high degree of unjustifiable homicidal danger which will do for depraved-heart murder: firing a bullet into a room occupied, as the defendant knows, by several people; starting a fire at the front door of an occupied dwelling; shooting into the caboose of a passing train or into a moving automobile, necessarily occupied by human beings; throwing a beer glass at one who is carrying a lighted oil lamp; playing a game of "Russian roulette" with another person; shooting at a point near, but not aiming directly at, another person; driving a car at very high speeds along a main street; shaking an infant so long and so vigorously that it cannot breathe; selling "pure" (i.e. undiluted) heroin. Other sorts of extremely risky conduct may be imagined; throwing stones from the roof of a tall building onto the busy street below; piloting a speedboat through a group of swimmers; swooping an airplane so low over a traveling automobile as to risk the decapitation of the motorist. In any such case,

if death actually results to an endangered person and occurs in a foreseeable way, the defendant's conduct makes him an eligible candidate for a murder conviction. (Footnotes omitted.)

6. Here, the defendant argues only that the offense of attempted second degree murder does not exist in Idaho. Fenstermaker makes no argument that the information upon which he pleaded guilty is insufficient for failure to allege intent to kill, and it is unlikely that such an allegation, if now made, would be successful under the liberal standard of review applied to challenges to informations made for the first time on appeal. *See State v. Cahoon*, 116 Idaho 399, 400, 775 P.2d 1241, 1242 (1989); *State v. Leach*, 126 Idaho 977, 895 P.2d 578 (Ct.App. 1995).

7. *See* Laws of Territory of Idaho, Crimes and Punishments, § 15–18 (1864).

*Aragon,* 107 Idaho 358, 361–63, 690 P.2d 293, 296–98 (1984); *State v. Dillon,* 93 Idaho 698, 713–14, 471 P.2d 553, 568–69 (1970), *cert. denied* 401 U.S. 942, 91 S.Ct. 947, 28 L.Ed.2d 223 (1971); *State v. Snowden,* 79 Idaho 266, 313 P.2d 706 (1957); *State v. Van Vlack,* 57 Idaho 316, 360–64, 65 P.2d 736, 756–759 (1937); *State v. Willis,* 24 Idaho 252, 260–65, 132 P. 962, 965–67 (1913); *State v. Rodriquez,* 106 Idaho 30, 35–36, 674 P.2d 1029, 1034–35 (Ct.App.1983). I write with hope that the ambiguities discussed above may someday be removed by action of the Idaho Legislature or by the Idaho Supreme Court's clarification of its interpretation of existing statutes.