## NED HORN V. THE STATE.

*No. 3980.   Decided December 16.*

1. **Theft—Brand on Animal as Evidence.**—While the brand on the stolen animal may be given in evidence to prove identity of the animal seen in possession of accused with that alleged to have been stolen, such brand is not evidence to prove ownership in a purchaser from the owner of the brand.

2. **Continuance—Alibi.**—Where defendant moved for a continuance for an absent witness, by whom he expected to prove that said witness accompanied him on the train to Waco on the afternoon preceding the theft on Sunday night, and that Waco was twenty-five or thirty miles distant from the place of the theft, and which evidence would have tended to establish defendant's theory of *alibi*, *held*, in the light of the other evidence in the case the court erred in refusing the application for continuance.

3. **Special Instruction — Burden of Proof.**— On a trial for horse theft, where defendant asked a special instruction to the effect that "the burden of proof never shifts from the State to defendant, but is upon the State throughout to first establish every constituent element of the offense," and which instruction was refused, *held*, error.

4. **Theft of Horse—Evidence Insufficient.**—See evidence held wholly insufficient to support a conviction for horse theft.

APPEAL from the District Court of Hill. Tried below before Hon. J. M. Hall.

This appeal is from a judgment of conviction for horse theft, wherein the punishment was assessed at five years imprisonment in the penitentiary. All the essential facts are stated in the opinion.

*Tarlton & Morrow* and *Smith & Wear*, for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of horse theft, and his punishment assessed at five years confinement in the penitentiary.

The evidence shows the horse was taken from the pasture of the owner on Sunday night. It was described as being "heavy built, dark bay or brown color, branded thus, Ƭ P, on left thigh, about fifteen hands high, and about 10 or 12 years old," and was taken in December, 1888. The indictment was returned and presented in court on March 4, 1890.

Kennard, for the State, testified, that he saw "defendant in Waco on the first Monday in December, 1888, in the possession of a heavy-set brown horse, 10 or 12 years old, about fifteen hands high, branded thus, Ƭ P, on left thigh. There were no other marks about the horse to attract attention. Defendant was leading the horse up to the auctioneer. The horse was sold by the auctioneer. Mr. Branch was with me. I did not bid on the horse. I did not know the horse. I did not know who owned the horse. I knew the brand. It was Joe Pool's brand. Pool did not own much stock at that time. It was before dinner. I did not then know Ned Horn, the defendant. * * * He was with Lem Horn. I do not know who bought the horse."

Branch testified, that he was in Waco with Kennard, and they were "sitting on the sidewalk together, when they noticed a little brown horse, 10 or 12 years old, branded thus, Ƭ P, on left thigh, about fifteen hands high." He did not know who noticed the horse first, he or Kennard; but they had some conversation about it. He testified, that when he first saw the horse it was in the hands of the auctioneer; that he knew the defendant; that he did not see the horse in the defendant's possession, as he did not see the defendant in Waco that day.

Clint Pool testified, that he was "acquainted with the horse which M. Bowman lost," and fully described him; that "at the time he was lost there were no other horses in my father's brand in the country very similar to him." This witness testified that the brand on the horse was his father's (Joe Pool's) brand, Ƭ P, as did the witness Kennard.

Nichols testified, he was sitting with defendant and Lem Horn on the same seat in the cars on Monday evening after the sale of the horse in Waco in the morning, as they were returning from Waco to Mount Calm, and heard Lem Horn, in the presence of defendant, say that they had been to Waco and sold their horses; that when they got within a point about three miles from Mount Calm Lem Horn said to Ned Horn, "You had better throw off your saddle;" that Ned Horn

got up and was gone a few minutes, and then returned. This witness did not know where defendant went, nor what he did, when he got up and disappeared.

This is substantially the State's case.

The defendant proved by Clint Pool that his father had sold most of the horses in the brand described to various parties; that there had been other horses in the stock branded very much like the Bowman horse; that his father Joe Pool for a number of years owned a stock of horses, about thirty or forty in number, and they had from time to time been sold off to various persons. Waco was twenty-four miles from Mount Calm, and the place where the horse was taken was four miles northeast of Mount Calm. Waco was west of Mount Calm.

The defendant further proved, that he went to Mount Calm on Sunday evening, and took the train at that point for Waco. He stated he was going to Waco on that train, and was on it when it left Mount Calm going in that direction.

As we view this evidence, the identification of the horse seen at Waco as the property of the alleged owner is too indefinite and conjectural to authorize the conviction had in this case. The brand on it was the brand of one Pool. Pool had sold quite a number of horses in this brand, and still owned the brand. The record of the brand was not offered in evidence, and if it had been it could only have proved ownership in Pool, unless the transfer of the particular horse in question had been shown to have taken place, and that Bowman was the owner of the horse then. The record of the brand in the name of Pool did not of itself tend to prove ownership in Bowman. The brand on the horse was but a matter of description, which might be utilized, with other facts, to prove the identity of the horse in question as the one seen in Waco. It was a fact admissible in evidence as tending to prove that identity; but it was not evidence to prove ownership in Bowman.

Had the ownership been alleged in Pool, the owner of the brand, then the cogency of the evidence could have been much more apparent. But Pool had parted title to the horse, and the brand ceased to operate as evidence of ownership, inasmuch as the law applicable to title to stock branded in a recorded brand did not operate in favor of the vendee of the owner of stock in such brand. Such brand being on the animal was not conclusive evidence of Bowman's title to it. Omit the brand from the description of the horse, and we will find only the color, age, and size of the horse by which to identify it, and no witness testified to the identity who had ever before seen the horse of Bowman or the one seen at Waco prior to the date of the sale thereof by the auctioneer in Waco. In view of the uncertainty of the evidence as to the identity of the horse sought to be shown to be Bowman's, and defendant's connection with the theft of said horse, we are unwilling to let this conviction stand as a precedent.

Appellant moved for a continuance for the testimony of an absent witness, by whom he expected to prove that he accompanied him to the city of Waco on the train on the Sunday evening preceding the theft on Sunday night. The court should have granted this motion. The facts relied on by the State are entirely circumstantial, and this evidence might have been of material advantage to defendant, and it may have been true. If so, it would have tended to strengthen defendant's case before the jury. The State relied upon the fact that, if the defendant went on the train to Waco, he either returned, committed the theft of the horse, or was acting in a conspiracy with Lem Horn in so stealing the horse. The defendant was entitled to rebut this idea by the best evidence at his command. It was material testimony, and may have been probably true. If defendant staid in Waco Sunday night, then he was not present at the place of the theft, twenty-five or thirty miles distant. If not, then the State would be forced upon the theory of a conspiracy between Lem Horn and defendant. The defendant was entitled to the alleged absent testimony.

The defendant requested the court to charge the jury, that "the burden of proof never shifts from the State to the defendant, but is upon the State throughout to first establish every constituent element of the offense." The court refused the instruction, and the defendant reserved his exception thereto in a proper bill. We are of opinion this was error. The burden is always on the State to overcome the presumption of innocence and the establishment of the guilt of the accused beyond a reasonable doubt. The principle that the burden of proof never shifts from the State to the defendant relates to the establishment of the *corpus delicti*, and the complicity of the defendant in the crime committed. Chapman v. The State, 1 Texas Ct. App., 728; Shafer v. The State, 7 Texas Ct. App., 239; Leonard v. The State, Id., 417; Lewis v. The State, Id., 567; Phillips v. The State, 26 Texas Ct. App., 228. This rule, however, does not relate to special defenses, such as nonage, insanity, former acquittal, etc., nor when the facts relied on as a defense are peculiarly within the knowledge of the defendant. See Willson's Criminal Statutes, section 114, for collated authorities.

There are other errors complained of, but we deem them not well taken. For the errors indicated, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.