(July 12, 1923.)

STATE, Respondent, v. WILLIAM SORENSEN, Appellant.

[216 Pac. 727.]

CRIMINAL LAW—LARCENY OF TWO ANIMALS—CHARGED AS SINGLE OF-
FENSE—STATE SHOULD ELECT WHEN TRANSACTIONS ARE SEPARATE.

    1. Where an information charges a defendant with the larceny of a cow and her calf, in a single count, and as one transaction, and the evidence discloses that if either of the animals was stolen, it was a separate and distinct offense from the larceny of the other animal, the state should elect upon which transaction it will rely for a conviction.

    2. Where a defendant is charged in a single count in an information with having stolen two animals, the taking of which animals, if they were stolen, constituted separate and distinct offenses, and the evidence is insufficient to establish the taking of one of the animals, and the jury are instructed that they may convict if they find the defendant guilty of the taking of either or both animals, the verdict should be set aside, since it cannot be ascertained for which transaction they intended to convict the defendant, or whether some of the jurors did not assent to the verdict on account of the evidence in support of the theft of the animal where the evidence was insufficient to support the charge of having stolen the animal.

APPEAL from the District Court of the Ninth Judicial District, for Bonneville County. Hon. James G. Gwinn, Judge.

Publisher's Note.

    2. Power and duty of court to direct or advise acquittal in criminal case for insufficiency of evidence, see notes in Ann. Cas. 1912C, 799; 17 A. L. R. 910.

Defendant was convicted of grand larceny and appeals. *Reversed* and *remanded*, with instructions for new trial.

W. P. Hanson, for Appellant.

The identity of stolen property must be established substantially as laid. (Underhill on Criminal Evidence, sec. 296; *Bank v. State*, 28 Tex. 624.)

An information containing a single count charges but a single offense. Evidence of two separate and distinct offenses cannot be introduced under said count. (*State* v. *Gaunts*, 60 Kan. 660, 57 Pac. 503.)

An information must not in the same count charge the defendant with the commission of two or more distinct offenses, and in case it does so it is bad for duplicity. (22 Cyc. 376, 378.)

In an action charging the defendant with the killing of two animals a conviction cannot be had on evidence showing that each was killed at a separate time. (*Thomas v. State*, 111 Ala. 51, 20 So. 617; *Burgess v. State*, 44 Ala. 190.)

When two offenses are charged in the same count in the information it is the duty of the state to elect upon which count it intends to rely for conviction. (*People v. Williams*, 133 Cal. 165, 65 Pac. 323.)

Failure of the court to instruct the jury that it is the duty of the state to make the election and to further instruct to the effect that they must find the defendant guilty of such offense as it has elected to stand on deprives the defendant of a fair and impartial trial. (*People v. Williams*, *supra*.)

A. H. Conner, Attorney General, and Jas. L. Boone, Assistant, for Respondent.

Where an information states more than one offense, demurrer is the proper remedy. (C. S., sec. 8870.)

In order to predicate error upon the failure of the trial court to give the proper instructions, it is necessary that

the complainant prepare instructions and make offer of them to the court. (*State v. Nolan*, 31 Ida. 71, 169 Pac. 295.)

WILLIAM A. LEE, J.—On November 21, 1921, an information was filed in the district court of the ninth judicial district, in and for Bonneville county, Idaho, charging William Sorensen, appellant herein, with grand larceny, in the taking and disposing of a certain white-faced cow of the Hereford type, of the age of about three years, particularly describing said animal by certain brands and earmarks, and as having a metal tag in one ear with the name of Alma Findlay stamped thereon, and also of a bald or white-faced sucking calf of the age of about three months, both of said animals being the property of Sylvester Keller, said larceny being committed on or about the tenth day of August, 1921.

A trial was had upon said information, resulting in a verdict of guilty by the jury, and appellant was sentenced to a term of from one to fourteen years in the state penitentiary. Thereafter appellant moved for a new trial, which was denied, and a certificate of probable cause being issued, the cause is here upon an appeal from the judgment and from the order overruling the motion for a new trial.

Appellant makes thirty-two assignments of error, but in view of the state of the record, which fails to show that exceptions were taken to many of the rulings complained of, and the conclusion we have arrived at upon the assignment of the insufficiency of the evidence, it will not be necessary to discuss all of these assignments.

It will be observed that the larceny of the two animals is charged in the information as having taken place on or about the tenth day of August, 1921. By its terms, it charges a single offense; that is, the larceny of a cow and calf, which, irrespective of value, constitutes grand larceny in this state. All the testimony offered at the trial shows that the taking of this cow and calf, if they were stolen, were two separate and distinct offenses, which occurred at

different times, and under such different circumstances that had the information disclosed the particular facts surrounding the alleged taking of each animal, the information would have been subject to demurrer under the third subdivision of C. S., sec. 8870. But this defect not appearing upon its face, when that fact appeared from the state's evidence, a motion to require it to elect upon which larceny it relied upon for a conviction should have been sustained if the same had been interposed, which does not appear to have been done.

Instructions Nos. 6 and 9 given by the court on its own motion were in part as follows:

"6. . . . . if you find from the evidence in this case that the defendant did steal, take or carry away either the cow or the calf described in the information in Bonneville county, state of Idaho, as charged in the information, and that he thereafter took said cow or calf into Jefferson county, Idaho, then you should find the defendant guilty of grand larceny.

"9. . . . . if the proof sufficiently meets the description of either animal, then the defendant may be convicted, provided his guilt as to that particular animal has been proven beyond a reasonable doubt."

The only testimony tending to connect the defendant with the larceny of the calf, aside from the testimony of numerous witnesses that there was such a calf with the cow in question, is found in the testimony of the witness William Lawson, who stated that he lived on Birch Creek, in Bonneville county, about 18 miles from Idaho Falls, and about a mile north and west of appellant Sorensen's ranch, the locality of the alleged larcenies; that he had lived there about eleven years, was a man with a family, and had done a little of everything, including farming and cattle raising; that he first saw the cow, which he describes as a bald or brockle-faced cow of the Hereford type, about the first of May, 1921, on said Birch Creek, where she was grazing on some vacant land of Mr. Keller's, the prosecuting witness; that she had at her side a red bald-faced male calf, about

a month or six weeks old; that he continued to see this cow and calf frequently for about a month as he passed along the road going to and from his work; that this cow left the Keller place, but continued to range on Birch Creek, until she finally disappeared about the 12th to the 18th of August; that the calf continued with her until about the 10th or 11th of July, at which time the witness saw the cow at appellant Sorensen's ranch without the calf. He explained that he had gone to Sorensen's ranch because he understood the calf was gone, and "he wanted to see about it"; that two or three days before this, he had seen Mr. Sorensen going down Birch Creek, traveling in a wagon He was then asked, upon direct examination, and replied:

"Q. Just state what you saw at that time.

"A. I was going up to look after some cattle, and I got up on the hill, what they call the Mormon flat, and I saw Mr. Sorensen coming down with a wagon, and I was on a kind of a hill, about four or five hundred feet from the road, and I stopped there, and Mr. Sorensen had to go around a sort of a steep hill and I noticed that he had, it looked to me like a couple of calves in the wagon, and I stopped and watched him till he got down the dugway, and it looked to me like they were calves, I know they were calves.

"Q. How were the calves standing or riding?

"A. They was laying in the wagon.

"Q. Can you tell whether they were alive or dead?

"A. I could not say, I suppose they was dead, and it looked to me like he had two or three planks off the lower side of the wagon and on the upper side he had a horse and bridle and saddle.

"Q. What did you do after you saw Mr. Sorensen traveling as you state?

"A. I went down about a half quarter and went up to his corral.

"Q. By the way, which way was he traveling?

"A. He was traveling down the valley, down the creek.

"Q. And how far was that from where his corral was?

"A. It was a quarter, something over a half or three-

quarters of a mile, between a half and three-quarters of a mile.

"Q. Did you say you went up to his place?      A. I did.

"Q. State what you saw when you got there.

"A. When I got there there was about six or seven head of cattle there and there was one of Mr. Sorensen's cows, an old black, red cow, and this cow of Mr. Keller's around the corral, there they were bellering around there. I couldn't see no tag because the corral is right on his east line. The creek was about ten feet from the corral, so I went outside and went around the corral and there was two pools of blood about three feet, or probably a little further apart, and it looked to me like some person had put a rope on the calves and pulled their heads through the fence and bled them, because the blood was not disturbed. It was just lying there in a nice pile."

The witness then testified that he continued to see the cow thereafter until about the eighth day of August, and that she did not then have with her a calf.

Upon cross-examination, he testified:

"Q. Now, you state in your direct examination that you understood the calf was gone. Did you so state?

"A. No, sir, not that I remember. I knew the calf was gone, yes, I knew the calf was gone.

"Q. You said you understood it was gone, did you not?

"A. Yes, the calf was gone, all right.

"Q. Who told you it was gone?

"A. I saw the calf going down when I went up that day. It was not with the cow, and I suppose it was gone."

In addition to this, the witness testified that appellant Sorensen had a number of cattle there. He was further asked:

"Q. Now you don't know what the description of those calves was that you saw Mr. Sorensen driving away with?

"A. The description?

"Q. Yes, what kind of calves they were.

"A. They were red was all I could see about them.

"Q. Didn't have bald faces?

"A. I could not see their heads.

"Q. You don't know whether they were alive or dead?

"A. They was laying in the wagon. No, I could not tell, but when I went up and looked at the blood I thought they must be dead.

"Q. But from your observation of them when they were in the wagon they might have been alive?

"A. I couldn't tell just then."

This is substantially all of the testimony tending to connect the defendant with the larceny of this calf, aside from the fact that the witnesses for the state testified that none of them had seen the calf after this time, although the cow in question continued to be observed by several of the witnesses, particularly the witness Fay Williams, who testified that he knew the cow in controversy, and first saw her on Birch Creek east of the Sorensen ranch in the latter part of July, 1921; that she appeared to have been suckling a calf, and that her bag was not quite dried up; that he saw her after that from the twelfth to the eighteenth day of August, but could not fix the time more definitely; that she passed the Fisher farm on Birch Creek below Sorensen's ranch; that this cow with four or five others was being driven by appellant Sorensen toward the west, that is, toward Rigby; and that this was about the middle of the afternoon, some time between the 12th and the 18th of August.

Appellant Sorensen was a farmer and cattle-raiser, in the habit of breeding and raising, as well as buying and selling, cattle of all ages, and during the summer season he ranged such cattle near his dry farm on Birch Creek. There was nothing unusual or extraordinary about his having calves of his own, such as were described by the witness Lawson. There was no further attempt to identify either one of the calves as being a calf with a white face, or in any other manner similar to the one that had been seen with the cow, or to show that the defendant had at or about this time marketed or otherwise had in his possession a veal of this description. The witness Lawson, being only a few hundred feet away when he observed the defendant hauling these two

calves, could easily have ascertained whether or not either of them fitted the description of the calf in question; but instead of doing so, he went in the opposite direction to the Sorensen ranch, three-quarters of a mile away, and from what he there saw concluded that the calves he had seen in defendant's wagon must have been dead, and drew the further inference that one of them was the calf in question.

The appellant met this by showing that the carcass of a white-faced calf was seen by one of the witnesses for the defense on Birch Creek, up the canyon from defendant's ranch, at about this same time, although the state offered testimony tending to show that it could not have been the calf in question.

In his defense, appellant also offered a number of character witnesses and other testimony tending to show that he was a long time resident of the town of Rigby, a man of affairs, one of the officers of the Cattlemen's Association, whose duty it was to assist in rounding up cattle on the range in the fall of the year and turn them over to their respective owners. Among the character witnesses who testified that they had known him for periods of from a few to very many years, and that his reputation for truth and veracity was excellent, were State Senator Gilchrist, the sheriff of the county, and others, whose testimony tended to show that appellant's character and standing in the community had always been excellent.

In view of the instruction which advised the jury that they might convict appellant if they believed that he had stolen either of the animals in question, it is impossible to say whether the jury intended to find appellant guilty of the larceny of the cow or of the calf, or of both of these animals, or whether a part of the jurors intended to find the appellant guilty of the larceny of the cow and the remainder guilty of the larceny of the calf.

A bald or brockle-faced cow, fitting the description of the cow claimed by the prosecuting witness, was about the eighteenth day of August, in company with a number of other cattle, driven by appellant from his ranch, about seventeen

miles east of Idaho Falls, to the town of Rigby, and by him placed in the stockyards there, where she was afterward found. This animal was kept until the case was tried; the witnesses inspected her during the trial, and at its close the jury examined the animal. In view of the fact that the case will probably be tried again, we refrain from expressing any opinion with regard to the sufficiency of the evidence relating to the larceny of the cow. With regard to the evidence as to the larceny of the calf, we think the same is clearly insufficient to sustain a conviction as to that animal. While it would be true that where a defendant was properly informed against and tried for the larceny of two or more animals of this kind, as a single transaction, the evidence would be sufficient if it showed that the defendant had stolen any one or more of such animals, in the instant case the verdict should not be sustained, for the reason that the jurors, or part of them, may have rendered their verdict of guilty in the belief that the evidence was sufficient to show that defendant had stolen the cow, while other jurors might have consented because they thought it sufficient to show defendant had stolen the calf, as they had been instructed that if they found the evidence sufficient as to either animal they might convict the defendant.

It ought not to require an extended argument to show that a defendant has not been given a fair trial within the meaning of the law where he has been tried for two or more distinct offenses, and the jury have been instructed that if they find him guilty of either they may convict, particularly where the evidence is wholly insufficient to sustain one of the charges.

There is not only an absence of sufficient evidence to connect the defendant with the larceny of the calf in question, but the evidence is insufficient to show that the calf was in fact stolen. As said in *State v. Sullivan,* 34 Ida. 68, 199 Pac. 647, 17 A. L. R. 902: ''Where proof of the *corpus delicti* is made by circumstantial evidence, it should be established by proof of such character as will exclude all uncertainty.''

It certainly cannot be said that because a calf is observed

running upon the public range by the side of its mother, and that some weeks thereafter the cow is found without a calf by her side, this would be such proof as to exclude all uncertainty about the calf having been actually stolen. Nor does the fact that the appellant was observed hauling a couple of calves in his wagon along the public highway tend to establish the fact that he had stolen one of them. The witness Lawson, who testifies to this circumstance, could easily have ascertained whether or not either of these animals suited the description of this white-faced calf, as he states that he was within a few hundred feet of appellant, in the daytime, when he was hauling them in his wagon along the highway. Instead of taking such precaution as might have set at rest the matter of whether or not one of these calves belonged to the cow, he neglected to do so, but went in the opposite direction to appellant's corral, where he concluded that there was incriminating evidence, such as he related. A man who has lived in a community all of his life and borne a good reputation should not be convicted of an offense so grave as grand larceny under such a state of facts as are here related by the witness.

As said in *State v. Burke,* 11 Ida. 420, 83 Pac. 228:

"It is not enough to say that a crime has been committed and somebody has committed it, and that somebody shall pay the penalty therefor, and that the state has been unable to find any other person upon whom they could fasten the crime, and that it is entirely possible and altogether convenient for the defendant to have perpetrated the offense. Something more must be done; facts or circumstances should be developed tending to connect the defendant with the commission of the offense, such as would be inconsistent with the actions and conduct of an innocent man."

"The well-established rule of law is, that the evidence must not only be consistent with the guilt of defendant, but it must be inconsistent with his innocence."

In *State v. Marcoe,* 33 Ida. 284, 190 Pac. 80, it is said:

"In order to sustain a conviction based solely on circumstantial evidence, the circumstances must be consistent with

the guilt of the accused and inconsistent with his innocence, and incapable of explanation on any other reasonable hypothesis than that of guilt.''

In the recent case of *State v. Blank,* 33 Ida. 730, 197 Pac. 821, in the specially concurring opinion of Budge, J., it is said:

''The general rule would seem to be that in a prosecution for larceny, in order to sustain a conviction, the state must identify the property alleged to have been stolen, and found in the possession of the accused, by the most direct and positive testimony of which the case is susceptible.

''Where the evidence merely shows possession by defendant of the same number of cattle as was stolen (*Hilligas v. State,* 55 Neb. 586, 75 N. W. 1110; *Harris v. State,* 13 Tex. App. 309), or of hogs with hair of the same color (*Smith v. State,* 44 Tex. Cr. 81, 68 S. W. 510), or of a horse with the same brand as prosecutor's, of which many had been sold (*Horn v. State,* 30 Tex. App. 541, 17 S. W. 1094), it has been held to be insufficient.''

In view of the court's instruction to the jury that it might convict if it found the defendant had stolen either the cow or the calf, and of the insufficiency of the evidence to satisfactorily establish the larceny of the calf, and of the impossibility of determining to what extent the jury based their verdict upon the evidence pertaining to the larceny of the calf, the cause should be reversed and remanded, with instructions to grant appellant a new trial, and it is so ordered.

McCarthy, Dunn and William E. Lee, JJ., concur.