764 P.2d 448

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kevin Earl BELL, Defendant–Appellant.**

**No. 16906.**

Court of Appeals of Idaho.

Nov. 7, 1988.

Nicholas Chenoweth and Scott L. Wyman, Law Offices of Nick Chenoweth, Orofino, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent.

PER CURIAM.

Following a jury trial, Kevin Bell was convicted of aggravated assault, I.C. § 18–905, and sentenced to a five-year indeterminate period in the custody of the Board of Correction. On appeal, Bell argues that his judgment of conviction should be reversed because admission of a tape-recorded statement made by one of the victims prevented him from receiving a fair trial; because he was denied a timely preliminary hearing; and because the jury's verdict was ambiguous. Bell also contends that his sentence was excessive. We hold: (1) that the trial court properly exercised its discretion in admitting the tape-recorded statement into evidence; (2) that the delay between Bell's initial appearance and his preliminary hearing does not provide a basis for reversal of the judgment of conviction; and (3) that, based on the entire record, the jury's verdict was not ambiguous. We also find that Bell's five-year indeterminate sentence is not excessive.

We therefore affirm the judgment and sentence.

## I

### Facts

In the early morning hours of March 16, 1986, Bell and his wife, Evelyn, were overheard yelling and screaming at one another by their next door neighbor. Shortly thereafter, the neighbor heard a knock at his door and encountered Evelyn's son, Bubba, who exclaimed that Bell was trying to kill Evelyn, Bubba and Bubba's brother, Ike. The neighbor then called the police. The police arrived and subsequently arrested Bell, who had left the premises and was hiding in another neighbor's yard.

Later that morning, Evelyn spoke with the arresting police officer, Tom Hasenyager, regarding the incident. Evelyn told Hasenyager that during their argument, she had threatened to kill Bell with a large knife. She stated that Bell seized the knife from her, made threatening gestures, and told Evelyn that he intended to kill her and the boys. Hasenyager tape recorded this conversation.

On March 17, 1986, Bell was charged with aggravated assault and was released after posting bail. A preliminary hearing was set for May 7, fifty-one days after Bell's initial appearance. At this hearing, Bell moved to dismiss the complaint, on the ground that he had not been given a preliminary hearing within the time limits set by I.C.R. 5.1. The prosecutor countered that Bell's preliminary hearing had been postponed because Bell had been in the custody of law enforcement officials in Ada County for a probation violation. The presiding magistrate denied the motion. Bell then waived his right to the preliminary hearing.

Prior to trial, Bell filed a discovery request pursuant to I.C.R. 16. While conducting discovery, Bell's attorney met with Officer Hasenyager regarding the incident. When asked about Evelyn's tape-recorded statement, Officer Hasenyager said he was not sure he still had the tape in his posses-

sion. No further request for the tape was made.

During preparation of the state's case, the prosecutor became concerned that Evelyn entertained second thoughts about having Bell incarcerated in jail, and that she might testify in favor of her husband at trial. Realizing that Evelyn's testimony regarding the alleged assault was crucial to his case, the prosecutor asked Officer Hasenyager to see if he could find the tape. Hasenyager located the tape, and the prosecutor subsequently notified Bell's counsel that he intended to use the tape as evidence. Notice was given to Bell only three days before trial.

At trial, Bell moved to exclude the tape as evidence, primarily because it was not provided to him pursuant to his discovery request, but also because the late disclosure precluded him from receiving a fair trial. Bell's motion was denied, as well as his further motion for a continuance to inspect the tape. The tape recording was introduced into evidence.

At the end of trial, the jury returned a verdict which stated:

> We, the jury, duly sworn and empaneled to try the above entitled cause, for our verdict say that we find of aggravated assault.

The verdict made no mention of Bell's guilt. Bell later filed a post-trial motion for a judgment of acquittal, arguing that omission of the word "guilty" rendered the verdict ambiguous. In response, the prosecutor offered the jury foreman's affidavit which stated that the word "guilty" had accidentally been omitted from the verdict. Bell's motion for acquittal was denied.

## II

### Admission of the Victim's Recorded Statement

Bell first contends that the trial judge abused his discretion by admitting Evelyn's tape-recorded statement into evidence. Bell argues that the prosecutor's late disclosure of the tape so prejudiced Bell's case that he was prevented from receiving a fair trial. Further, Bell asserts that his motion

for continuance to examine the tape should have been granted so that an expert could have tested whether the tape had been altered.

■ The law concerning late disclosure of evidence in a criminal case is well settled. Where the question is one of late disclosure—rather than a failure to disclose—the inquiry on appeal is whether the lateness of disclosure so prejudiced the defendant's preparation or presentation of his defense that he was prevented from receiving a fair trial. *State v. Olsen*, 103 Idaho 278, 647 P.2d 734 (1982); *State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978); *State v. Hansen*, 108 Idaho 902, 702 P.2d 1362 (Ct. App.1985). Similarly, granting a motion for continuance is within the trial court's discretion and will not be disturbed unless there is an abuse of that discretion. *State v. Hiassen*, 110 Idaho 608, 716 P.2d 1380 (Ct.App.1986).

■ In reviewing this record, we conclude that late disclosure of the tape recording did not prohibit Bell from receiving a fair trial. Bell was notified of the tape's existence within a reasonable time after its whereabouts were discovered. There were no dilatory tactics on the part of the prosecutor; he decided to use the tape only after it appeared that Evelyn might testify on behalf of Bell. In addition, Bell was adequately prepared to test the authenticity and content of the tape recording at trial. Bell cross-examined Officer Hasenyager regarding his making and custody of the tape, and similarly examined Evelyn regarding the statements she made, and her motives for making them.

■ We are also not persuaded that the trial judge's decision to deny Bell's motion for a continuance to examine the tape was an abuse of discretion. Bell argues that an expert's review of the tape would have revealed whether the tape had been altered. However, at trial, Evelyn admitted to making the incriminating statements on the tape, but testified that she did so only to "hurt" Bell, and that most of what she told Officer Hasenyager about the incident was not true. There was no indication that the tape had been altered. Consequently,

we cannot say that the trial judge erred in denying Bell's motion for continuance on the collateral issue of the authenticity of the tape recording. This decision was within the court's discretion. We will not disturb it on appeal.

We therefore hold that Bell was not denied a fair trial due to late disclosure of the tape recording, and that the trial judge did not abuse his discretion in denying Bell's motion for a continuance to examine the tape.

## III

### *Right to a Timely Preliminary Hearing*

■ Bell next argues that the fifty-one day delay between his initial appearance and preliminary hearing violated his procedural right to a timely preliminary hearing. Bell contends denial of this right mandates a reversal of his conviction.

We disagree. Idaho Criminal Rule 5.1, in pertinent part, states:

Unless indicted by a grand jury, a defendant, when charged in a complaint with any felony, is entitled to a preliminary hearing. If the defendant waives the preliminary hearing, the magistrate shall forthwith file a written order in the district court holding him to answer. If the defendant does not waive the preliminary hearing, the magistrate shall fix a time for the preliminary hearing to be held within a reasonable time, but in any event not later than fourteen (14) days following the defendant's initial appearance if the defendant is in custody and no later than twenty-one (21) days after the initial appearance if he is not in custody.

Although Rule 5.1 expressly limits the period within which a defendant's preliminary hearing must be held, we construe the statute to permit an extension of those limits for good cause. "Good cause" can occur in a variety of circumstances, including delays brought on by factors not in direct control of the prosecutor or law enforcement officials. In this case, the preliminary hearing delay resulted from Bell's incarceration in Ada County on a probation violation. Nei-

ther the prosecutor nor the local law enforcement officials had anything to do with this delay. These circumstances constitute a good cause for extending the date of Bell's preliminary hearing. We therefore see no reason to reverse his conviction based upon the alleged delay.

## IV

### Jury Verdict

Bell further maintains that the jury's verdict was ambiguous, and as a result, he was entitled to a judgment of acquittal or a new trial. Bell's argument is based upon omission of the word "guilty" from the jury verdict. Further, Bell asserts that the trial judge could not, on his own, correct the wording of the verdict, nor could he change the wording based upon the affidavit of the jury foreman, who stated that omission of the word "guilty" was a typographical error.

In Idaho, we recognize that a verdict must be definite, certain, and specific as to the identity of the crime to which the defendant has been convicted. *State v. Doolittle*, 58 Idaho 1, 68 P.2d 904 (1937). The remedy for an ambiguous jury verdict is to grant a new trial. *State v. Sorensen*, 37 Idaho 517, 216 P. 727 (1923). We also recognize that jurors may not impeach their verdict by the use of affidavit or otherwise, unless the verdict was determined by chance. *State v. Scroggins*, 91 Idaho 847, 433 P.2d 117 (1967); *State v. Rodriquez*, 106 Idaho 30, 674 P.2d 1029 (Ct.App.1983); *see* I.R.E. 606(b). However, a jury verdict will not be held invalid based upon a technicality not of a prejudicial nature. *State v. Carpenter*, 92 Idaho 12, 435 P.2d 789 (1967); *State v. Rodriguez*, 93 Idaho 286, 460 P.2d 711 (1969). In fact, the Idaho Supreme Court has said that where the error is apparently clerical, it should be corrected by the judge himself. *State v. Rodriquez, supra; see* I.C.R. 36. In determining whether a verdict should be corrected, we will review the entire record. *State v. Carpenter, supra.*

In this case, Bell maintains that the verdict against him was prejudicial because it did not convey beyond a reasonable doubt the meaning and intention of the jury. *See Yeager v. People*, 170 Colo. 405, 462 P.2d 487 (1969). We disagree. This is not a case where the jury or trial court wished to change or amend its verdict. Based on a review of the entire record, it is obvious that the jury intended to find Bell guilty as charged. Although the record does not reveal what verdict was read at trial, all indications suggest that the judge, jury, defendant and prosecutor assumed the rendered verdict was "guilty." The jury instructions correctly addressed and set out four alternative verdicts: one of not guilty, which did not include the name of any crime; two which addressed lesser included offenses; and only one instruction which mentioned aggravated assault, reading, "we find the Defendant guilty of aggravated assault." Given the content of these instructions, it is obvious that the verdict selected by the jury reflected a finding of guilt on the charge filed against Bell. Furthermore, all jurors were polled and each asked if they agreed with the final verdict, to which each answered in the affirmative. Immediately thereafter, the trial court set a date for sentencing. The jury foreman's affidavit confirmed Bell's guilt. The trial court's insertion of the word "guilty" was merely a correction of what was obviously a clerical mistake in the verdict form. There were no indications that Bell or anyone else thought the verdict was anything but guilty. We therefore hold that the jury's verdict was not ambiguous, and that the trial court properly corrected the jury verdict.

## V

### Sentencing

Finally, Bell submits that his five-year indeterminate sentence was an abuse of the sentencing judge's discretion. Bell contends that he should have been placed on probation because his wife Evelyn did not want the state to prosecute him for his crime; she intended to remain married to him and she wished them to go on living together as a family.

Sentencing is a discretionary function of the trial judge; a sentence within the statutory limit will not be disturbed absent a clear abuse of discretion. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence represents a clear abuse of discretion only if it is shown to be unreasonable upon the facts of the case. *Id.* We see no abuse of discretion in this case. In Idaho, aggravated assault carries a maximum five-year penalty. I.C. § 18–905. Although Bell points to factors which mitigate against imposing a maximum sentence, the sentencing judge noted that Bell had previously been convicted of other felonies, and had a history of probation violations. The judge's decision was based upon all of these relevant facts. We find no abuse in his decision.

The judgment of conviction, imposing a five-year indeterminate sentence for aggravated assault, is affirmed.